FILED
CLERK
3:12 pm, Apr 18, 2019
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
MATKAL LLC, d/b/a BLUE POINT,

                                    Plaintiff,

    -against-

VG RUSH CORP.,

                                    Defendant.
------------------------------------------------------------------------X
VG RUSH CORP.,

                                    Third-Party Plaintiff,

    -against-

PRICELESS RESOURCE INC. and DASP GROUP LLC,
d/b/a SAVEWIZE PREMIUM CLOSEOUTS,

                                    Third-Party Defendants.
------------------------------------------------------------------------X

**ORDER**
18-CV-2833(SJF)(AKT)

FEUERSTEIN, District Judge:

I.     INTRODUCTION

        On or about April 19, 2018, plaintiff Matkal LLC, d/b/a Blue Point ("plaintiff" or "Matkal") commenced this action against defendant VG Rush Corp. ("defendant/third-party plaintiff" or "VG Rush") in the Supreme Court of the State of New York, County of Nassau (the "state court"), seeking, *inter alia*, actual damages in the amount of four thousand eight hundred sixty-five dollars ($4,865.00) for VG Rush's alleged breach of contract; and consequential damages in an amount of "not less than" two hundred sixty thousand dollars ($260,000.00), (Complaint ["Compl."], ¶¶ 27, 33, 40 and "Wherefore" clause at p. 8), for VG Rush's alleged

1

breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of the New York Uniform Commercial Code ("UCC"). On May 11, 2018, VG Rush filed a notice of removal pursuant to 28 U.S.C. § 1441, removing the action to this Court on the basis that this Court has original subject matter jurisdiction under 28 U.S.C. § 1332(a) ("Section 1332(a)") based upon the diversity of citizenship of the parties. (Notice of Removal ["NOR"], ¶ 4).

Issue was joined by the service and filing of an answer on behalf of VG Rush on June 6, 2018. On that same date, VG Rush also filed a third-party complaint against third-party defendants Priceless Resource Inc. ("PRI") and DASP Group LLC, d/b/a Savewize Premium Closeouts ("Savewize") (collectively, "third-party defendants"), asserting claims, *inter alia*, for equitable or implied indemnity; indemnity under Section 2-312 of the UCC; and damages for third-party defendants' alleged breach of their warranties under Section 2-312 of the UCC.

Savewize filed an answer to the third-party complaint on August 6, 2019. Pending before the Court is PRI's pre-answer motion to dismiss this action pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction or, in the alternative, to dismiss plaintiff's claims for consequential damages pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for relief. For the reasons set forth below, PRI's motion is denied in its entirety.

II.     BACKGROUND

   A.      Factual Allegations[1]

      1. The Complaint

Plaintiff "purchases items for resale on Amazon Marketplace, an e-commerce platform owned and operated by Amazon that enables third-party sellers . . . to sell new or used products through Amazon.com." (Compl., ¶ 1).

On August 31, 2017, plaintiff purchased from VG Rush two hundred seventy-eight (278) "'Magformers standard set 30 count products' (item number 63076) (the 'Magformers Products') at a wholesale cost of $17.50 each." (Compl., ¶ 6; *see also Id.*, ¶ 9). According to plaintiff, VG Rush falsely (i) represented to it (A) "that the Magformers Products were authentic products purchased from [PRI], a distributor authorized by Magformers LLC, the manufacturer of the Magformers Products[,]" (*id.*, ¶ 7; *see also id.*, ¶ 31), and (B) "that these products had been picked up directly from [PRI]," (*id.*, ¶ 8); and (ii) warranted to it (A) that "the Magformers Products were authentic and manufactured by Magformers LLC and could be offered for sale as Magformers LLC's products[,]" (*id.*, ¶ 17; *see also id.*, ¶ 31), and (B) that "title would be good, the transfer to [plaintiff] would be rightful, and the goods would be delivered free of the rightful claim of any third person by way of infringement or the like." (*Id.*, ¶¶ 17, 35; *see also Id.*, ¶¶ 18, 36). In purported reliance upon those representations, plaintiff "reasonably believed that the Magformers Products were authentic." (*Id.*, ¶ 8). Plaintiff paid VG Rush a total of four thousand

---

[1] The following facts are taken from the allegations in the pleadings and are assumed to be true for purposes of this motion. They do not constitute findings of fact by the Court.

eight hundred sixty-five dollars ($4,865.00) for its sale of the Magformers Products. (*Id.*, ¶¶ 10, 23, 26).

Thereafter, plaintiff "offered the Magformers Products for sale through Amazon Marketplace." (Compl., ¶ 11; *see also Id.*, ¶ 32). On September 25, 2017, Magformers LLC filed two (2) complaints with Amazon alleging that plaintiff was selling counterfeit Magformers Products on Amazon Marketplace. (*Id.*, ¶ 12). Although plaintiff disputed Magformers LLC claims, and provided Amazon and Amazon Marketplace with the invoices it had received from VG Rush, "Magformers LLC provided to Amazon Marketplace sufficient proof the . . . Magformers Products were counterfeit." (*Id.*, ¶¶ 12-13). Accordingly, on September 29, 2017, Amazon Marketplace suspended plaintiff's account for thirteen (13) days "on the basis that counterfeit goods had been offered for sale." (*Id.*, ¶¶ 13, 15).

Plaintiff alleges, *inter alia*, that in addition to the four thousand eight hundred sixty-five dollars ($4,865.00) it paid for the counterfeit Magformers Products, it lost approximately twenty thousand dollars ($20,000.00) per day, or an amount "in excess of" two hundred sixty thousand dollars ($260,00.00), as a result of the thirteen (13)-day suspension from Amazon Marketplace. (Compl., ¶¶ 15, 24-27, 33).

According to plaintiff, VG Rush rejected its demand for VG Rush to provide it with "a full refund for the Magformers Products and compensation of the $20,000 loss per day [it] suffered as a result of its 13-day suspension from Amazon Marketplace, totaling $260,000." (Compl., ¶¶ 19-20, 37-38).

4

2. The Third-Party Complaint

VG Rush alleges, *inter alia*, (a) that it purchased the Magformers Products from PRI,[2] (Third-Party Complaint ["TPC"], ¶¶ 3, 18, 33, 42, 50); (b) that PRI had previously purchased the Magformers Products from Savewize, (*id.*, ¶¶ 3, 19, 32, 41, 49); (c) that both third-party defendants "have knowledge about the chain of title and provenance of the Magformers Products that [it] does not possess[,]" (*id.*, ¶ 3; *see also id.*, ¶¶ 28, 37); and (d) that the sale of the Magformers Products by both third-party defendants were "made subject to Section 2-312 of the [UCC]," pursuant to which the sales were "subject to express warranties that the Magformers Products were conveyed with good title, were free of any rightful claim by any third person of infringement, and were rightfully transferred." (*Id.*, ¶¶ 3, 29, 46, 54). According to VG Rush, it did not furnish either third-party defendant with any specifications regarding the Magformers Products. (*Id.*, ¶ 20).

VG Rush further alleges that after plaintiff informed it of the charge by Magformers LLC that the Magformers Products plaintiff was selling on Amazon Marketplace were counterfeit, *inter alia*, (a) it made inquiries to both PRI and Savewize "about the provenance and chain of title of the Magformers Products[,]" (TPC, ¶¶ 21-22); (b) PRI told it that it had bought the Magformers Products from Savewize and assured it "that the Magformers Products were genuine goods that were not counterfeit," (*id.*, ¶ 21; *see also id.*, ¶ 36); and (c) "Savewize refused to tell

---

[2] Specifically, VG Rush alleges that it purchased four thousand eight (4,008) Magformers Products from PRI at a price of eighteen dollars and sixty-five cents ($18.65) each pursuant to an invoice dated August 4, 2016, and then later sold the Magformers Products at a loss. (TPC, ¶ 18).

[it] from whom [Savewize] had purchased the products, but . . . assured [it] that the Magformers Products were genuine goods that were not counterfeit." (*Id.*, ¶ 22; *see also Id.*, ¶ 36). According to VG Rush, it then informed plaintiff, based upon its conversations with PRI and Savewize, "of its understanding that the Magformers Products were genuine goods." (*Id.*, ¶ 23).

B. Procedural History

On or about April 19, 2018, plaintiff commenced this action against VG Rush in the state court, seeking, *inter alia*, actual damages in the amount of four thousand eight hundred sixty-five dollars ($4,865.00) for VG Rush's alleged breach of contract (first cause of action), (Compl., ¶ 26); and consequential damages in an amount of "not less than" two hundred sixty thousand dollars ($260,000.00), (*id.*, ¶¶ 27, 33, 40 and "Wherefore" clause at p. 8), for VG Rush's alleged breach of contract (first cause of action), breach of the implied covenant of good faith and fair dealing (second cause of action), and violation of the UCC (third cause of action). On May 11, 2018, VG Rush filed a notice of removal pursuant to 28 U.S.C. § 1441, removing the action to this Court on the basis that this Court has original subject matter jurisdiction under 28 U.S.C. § 1332(a) based upon the diversity of citizenship of the parties. (NOR, ¶ 4).

Issue was joined by the service and filing of an answer on behalf of VG Rush on June 6, 2018. On that same date, VG Rush also filed a third-party complaint against PRI and Savewize, asserting claims, *inter alia*, for equitable or implied indemnity of "any award against it," as well as for "all fees, expenses, and costs it incurs in defending against Matkal's claims or in bringing the[] third-party claims," (first cause of action), (TPC, ¶ 39); for indemnity under Section 2-312

of the UCC of "any award against it," as well as for "all fees, expenses, and costs it incurs in defending against Matkal's claims or in bringing the[] third-party claims" (second cause of action), (*id.*, ¶ 47); and to recover "any damages resulting from [third-party defendants'] breaches" of their express warranties under Section 2-312 of the UCC, including "payment of any award or sums that VG Rush is ordered to pay to Matkal on Matkal's claims in this action, and payment of any fees, expenses, and costs that VG Rush incurs in defending against Matkal's claims or in bringing the[] third-party claims" (third cause of action). (*Id.*, ¶ 55). VG Rush contends, *inter alia*, that even though it "understands that the Magformers Products were genuine and authentic[,]" to the extent that it is found to be liable to plaintiff, "any and all of that liability should be borne by [PRI] and Savewize[,]" (TPC, ¶ 27; *see also id.*, ¶¶ 38-39), since, *inter alia*, in contrast to third-party defendants, it "was a completely innocent purchaser of the Magformers Products who sold the products at a loss[,]" (*id.*, ¶ 28; *see also id.*, ¶¶ 36-37); and it "did not form any agreement with [PRI] or Savewize that would have relieved either dealer of their express warranties under the [UCC]." (*Id.*, ¶ 29).

Savewize filed an answer to the third-party complaint on August 6, 2019. PRI now moves to dismiss this action pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction or, in the alternative, to dismiss plaintiff's claims for consequential damages pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for relief.

III. DISCUSSION

    A. Fed. R. Civ. P. 12(b)(1)

"Federal courts are courts of limited jurisdiction," *Gunn v. Minton*, 568 U.S. 251, 256, 133 S. Ct. 1059, 185 L. Ed. 2d 72 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994)); *see also Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 376, 132 S. Ct. 740, 181 L. Ed. 2d 881 (2012), and may not preside over cases absent subject matter jurisdiction. *See Lightfoot v. Cendant Mortg. Corp.*, ─ U.S. ─, 137 S. Ct. 553, 560, 196 L. Ed. 2d 493 (2017) ("[A] court's subject-matter jurisdiction defines its power to hear cases."); *Kokkonen*, 511 U.S. at 377, 114 S. Ct. 1673 (holding that federal courts "possess only that power authorized by Constitution and statute . . . .") Lack of subject matter jurisdiction cannot be waived or forfeited, and may be raised at any time by a party or by the court *sua sponte*. *See Gonzalez v. Thaler*, 565 U.S. 134, 141, 132 S. Ct. 641, 181 L. Ed. 2d 619 (2012); *see also Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153, 133 S. Ct. 817, 184 L. Ed. 2d 627 (2013) ("Objections to a tribunal's jurisdiction can be raised at any time, even by a party that once conceded the tribunal's subject-matter jurisdiction over the controversy."); *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434, 131 S. Ct. 1197, 179 L. Ed. 2d 159 (2011) ("[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press. . . . Objections to subject-matter jurisdiction . . . may be raised at any time.")

    Section 1332(a) "require[s] complete diversity between all plaintiffs and all defendants."

8

*Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89, 126 S. Ct. 606, 163 L. Ed. 2d 415 (2005); *see also Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co., Inc.*, 772 F.3d 111, 117-18 (2d Cir. 2014) (holding that Section 1332 "requires 'complete diversity,' *i.e.*, all plaintiffs must be citizens of states diverse from those of all defendants.") It is axiomatic that the jurisdiction of a federal court "depends upon the state of things at the time of the action brought." *Grupo Dataflux v. Atlas Glob. Grp. L.P.*, 541 U.S. 567, 570, 124 S. Ct. 1920, 158 L. Ed. 2d 866 (2004). Pursuant to this "time-of-filing rule," all challenges to subject matter jurisdiction premised upon diversity of citizenship are measured "against the state of facts that existed at the time of filing[.]" *Id.* at 570-71, 124 S. Ct. 1920.

"[I]t is well established that the party seeking to invoke jurisdiction under 28 U.S.C. § 1332 bears the burden of demonstrating that the grounds for diversity exist and that diversity is complete." *Herrick Co., Inc. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 322-323 (2d Cir. 2001); *see also Pennsylvania Pub. Sch.*, 772 F.3d at 118 ("The party asserting jurisdiction bears the burden of proof.") "[D]iversity of citizenship should be distinctly and positively averred in the pleadings, or should appear with equal distinctness in other parts of the record." *Leveraged Leasing Admin. Corp. v. PacificCorp Capital, Inc.*, 87 F.3d 44, 47 (2d Cir. 1996) (quotations and citation omitted); *see also John Birch Soc'y v. National Broad. Co.*, 377 F.2d 194, 197 (2d Cir. 1967) ("[D]iversity of citizenship must be apparent from the pleadings.") "A conclusory allegation . . . regarding diversity of citizenship does not extinguish the Court's responsibility to determine, on its own review of the pleadings, whether subject matter jurisdiction exists." *Richmond v. International Bus. Machs. Corp.*, 919 F. Supp. 107, 108 (E.D.N.Y. 1996); *accord*

*Courtyard Apartments Prop. 1, LLC v. Rosenblum*, No. 17-cv-2909, 2018 WL 1611386, at * 1 (E.D.N.Y. Apr. 3, 2018).

The notice of removal sufficiently alleges the citizenship of defendant/third-party plaintiff, insofar as it asserts that VG Rush "is a California corporation that is headquartered in Northridge, California."[3] (NOR, ¶ 4). "For purposes of diversity jurisdiction, a corporation is deemed, as relevant here, to be a citizen both of the state in which it has its principal place of business and of any state in which it is incorporated." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 60 (2d Cir. 2016) (citing 28 U.S.C. § 1332(c)(1)); *accord Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 48 (2d Cir. 2012).

However, the notice of removal, which relies solely on the allegations in plaintiff's complaint with respect to the citizenship of plaintiff, (NOR, ¶ 4), *i.e.*, that plaintiff "is a Delaware limited liability company, authorized to do business in the State of New York and with a principal place of business located at 111 Hempstead Turnpike, West Hempstead, Nassau County, NY 11552[,]" (Compl., ¶ 1), does not sufficiently allege plaintiff's citizenship. For diversity purposes, the citizenship of an unincorporated entity like plaintiff, *e.g.* a limited liability company, limited partnership, unincorporated association, etc., "is determined by the citizenship of each of its members." *Carter*, 822 F.3d at 60; *see also Americold Realty Trust v. Conagra Foods, Inc.*, ─ U.S. ─, 136 S. Ct. 1012, 1015, 194 L. Ed. 2d 71 (2016) (holding that for

---

[3] In addition, the third-party complaint sufficiently alleges: (i) that defendant/third-party plaintiff "is a California corporation with its principal place of business at 8803 Amigo Ave., Northridge, CA 91324[,]" (TPC, ¶ 6); and (ii) that PRI "is a New York corporation with its principal place of business in Brooklyn, New York." (*Id.*, ¶ 7).

10

unincorporated entities, such as limited liability companies, "diversity jurisdiction in a suit by or against the entity depends on the citizenship of all its members." (quotations, alterations and citation omitted)); *Carden v. Arkoma Assocs.*, 494 U.S. 185, 196-97, 110 S. Ct. 1015, 108 L. Ed. 2d 157 (1990) ("[D]iversity jurisdiction in a suit by or against [an] [artificial] entity depends on the citizenship of all the members . . . ." (quotations and citation omitted)). Thus, where, as here, an unincorporated entity is named as a party to the action, the party seeking to invoke this Court's jurisdiction must demonstrate the citizenship (not just the residency) of all natural persons who are members of the entity, as well as "the place of incorporation and principal place of business of any corporate entities that are members of the . . . [entity]." *Mills 2011 LLC v. Synovus Bank*, 921 F. Supp. 2d 219, 220-21 (S.D.N.Y. 2013) (citing *Handelsman v. Bedford Vill. Assocs. Ltd. P'ship*, 213 F.3d 48, 51-52 (2d Cir. 2000)); *accord New Millennium Capital Partners, III, LLC v. Juniper Grp. Inc.*, No. 10 Civ. 46, 2010 WL 1257325, at * 1 (S.D.N.Y. Mar. 26, 2010). If the member or members of an unincorporated entity are themselves an unincorporated entity, "citizenship is determined by an upstream analysis of its members and structure." *Palmiotti v. JAF Carrier LLC*, No. 15-cv-2365, 2017 WL 1166364, at * 2 (E.D.N.Y. Mar. 28, 2017) (citing *Bayerische Landesbank*, 692 F.3d at 49).

Nonetheless, defendant/third-party plaintiff, as the party seeking to invoke this Court's jurisdiction, has remedied that pleading deficiency by submitting evidence regarding the citizenship of both of plaintiff's members. Specifically, VG Rush submits plaintiff's amended response to its demand pursuant to Local Civil Rule 26.1 of the Local Rules of the United States District Court for the Southern and Eastern Districts of New York, indicating, in relevant part,

11

that plaintiff "is a Delaware limited liability company with a principal place of business in West Hempstead, New York" and has two (2) members, both of whom are individuals and were domiciled in the State of New York as of the date of the amended response, August 9, 2018, (Declaration of Marc J. Pernick, Ex. 1), and, thus, at the time the notice of removal was filed. *See generally Wright v. Musanti*, 887 F.3d 577, 585 (2d Cir. 2018) ("[I]n cases removed to federal court from state court on the basis of diversity jurisdiction, diversity of citizenship need be established only at the time of removal . . . .") Since defendant/third-party plaintiff demonstrated that at the time of filing the notice of removal, it was a citizen of the State of California and plaintiff's members were both citizens of the State of New York, it satisfied its burden of demonstrating that the grounds for diversity existed and that diversity was complete. As the complaint alleges damages in excess of seventy-five thousand dollars ($75,000.00), plaintiff's claims against VG Rush fall within this Court's original diversity jurisdiction under 28 U.S.C. § 1332(a).

Although the third-party complaint asserts that PRI is also a citizen of the State of New York, (*see* TPC, ¶ 7), and, thus, is a citizen of the same state as plaintiff, that does not deprive this Court of subject matter jurisdiction because "in cases where a district court has original jurisdiction, it may also exercise 'supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy[,]'" *Metro Found. Contractors, Inc. v. Arch Ins. Co.*, 498 F. App'x 98, 101 (2d Cir. Sept. 28, 2012) (summary order) (quoting 28 U.S.C. § 1367(a)), "includ[ing] claims that involve the joinder or intervention of additional parties." 28 U.S.C. § 1367(a). No party disputes

12

that VG Rush's claims against PRI are part of the "same case of controversy" as the claims asserted by plaintiff against VG Rush. Accordingly, this Court has supplemental jurisdiction over the third-party claims unless they are excluded from the jurisdictional grant of 28 U.S.C. § 1367(a) because they fall within an exception created by 28 U.S.C. § 1367(b) with respect to diversity cases.

> Section 1367(b) provides, in relevant part:
>
> > "In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims *by plaintiffs* against persons made parties under Rule 14 [Third-Party Practice] . . . of the Federal Rules of Civil Procedure, . . . when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332."

28 U.S.C. § 1367(b) (emphasis added). Plaintiff does not assert any claims against PRI; only VG Rush does. Accordingly, the exceptions to supplemental jurisdiction created by Section 1367(b) are inapplicable. *See, e.g. Metro Found.*, 498 F. App'x at 101 (finding Section 1367(b) to be inapplicable to the third-party defendant's claims against the plaintiff).

Nor does PRI assert any claim against plaintiff. Indeed, there are no nondiverse parties present on opposite sides of this lawsuit that would "eliminate[] the justification for providing a federal forum." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 562, 125 S. Ct. 2611, 162 L. Ed. 2d 502 (2005). Rather, plaintiff, a citizen of New York, asserts claims against VG Rush, a citizen of California; and VG Rush, a citizen of California, asserts claims against PRI, a citizen of New York, and Savewize, a citizen of New Jersey. *See, e.g. Caterpillar Inc. v. Lewis*, 519 U.S. 61, 66, n. 1, 117 S. Ct. 467, 136 L. Ed. 2d 437 (1996) (finding that since there was no dispute between the plaintiff and the third-party defendant, *i.e.*, the third-party defendant was adverse

solely to the defendant/third-party plaintiff, the third-party complaint "had no bearing on the authority of the federal court to adjudicate the diversity claims [the plaintiff] asserted against [the defendant/third-party plaintiff].") There are no other claims, counterclaims or cross claims asserted in this action. Indeed, PRI does not contend otherwise; its jurisdictional argument is premised solely upon the deficiency in the pleadings regarding the citizenship of Matkal which, as set forth above, VG Rush has sufficiently remedied.[4] Accordingly, the branch of PRI's motion seeking to dismiss this action pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction is denied.

B.     Fed. R. Civ. P. 12(b)(6)

1. Standard of Review

The standard of review on a motion made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is that a plaintiff plead sufficient facts "to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). The

---

[4] Moreover, PRI does not dispute VG Rush's contentions in this regard in its reply memorandum of law. Indeed, PRI's reply does not address the branch of its original motion seeking dismissal for lack of subject matter at all; it contends only that "VG Rush's claims for consequential damages should be dismissed." (PRI's Reply Memorandum of Law in Further Support of Motion to Dismiss at 3). Thus, PRI implicitly concedes that VG Rush has sufficiently demonstrated the citizenship of plaintiff so as to confer this Court with subject matter jurisdiction under 28 U.S.C. §1332(a).

plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-- but it has not 'show[n]'-- 'that the pleader is entitled to relief.'" *Id.* at 679, 129 S. Ct. 1937 (brackets in original) (quoting Fed. R. Civ. P. 8(a)(2)). "Determining whether a complaint states a plausible claim for relief will[] . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937 (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. 544, 127 S. Ct. at 1959.

In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Kim v. Kimm*, 884 F.3d 98, 102-03 (2d Cir. 2018); *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017). However, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937. "While legal conclusions can provide the framework of a complaint, they must be supported by factual

15

allegations." *Id.* at 679, 129 S. Ct. 1937. "In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.*; *see also Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010).

Nonetheless, a plaintiff is not required to plead "specific evidence or extra facts beyond what is needed to make the claim plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120-21 (2d Cir. 2010); *accord Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 729-30 (2d Cir. 2013). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679, 129 S. Ct. 1937.

In deciding a motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must limit itself to the facts alleged in the complaint, which are accepted as true; to any documents attached to the complaint as exhibits or incorporated by reference therein; to matters of which judicial notice may be taken; or to documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); *see also Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230-31 (2d Cir. 2016).

2. Consequential Damages

PRI contends, *inter alia*, that "consequential damages are not recoverable" because (i) the

16

third-party complaint does not allege that it "knew, or should have known, that the Magformer [sic] Products it purchased from Savewize and immediately resold to VG Rush were counterfeit[,]" (PRI's Memorandum of Law in Support of its Motion to Dismiss at 5); and (ii) "it did not foresee at the time of sale to VG Rush, that a year later, a fraction of its original order would be resold to another buyer who would be removed from the Amazon Marketplace." (*Id.* at 7).

Section 2-312 of the UCC provides, in relevant part:

> "(1) Subject to subsection (2) there is in a contract for sale a warranty by the seller that (a) the title conveyed shall be good, and its transfer rightful; . . . .
>
> (2) A warranty under subsection (1) will be excluded or modified only by specific language or by circumstances which give the buyer reason to know that the person selling does not claim title in himself or that he is purporting to sell only such right or title as he or a third person may have.
>
> (3) Unless otherwise agreed a seller who is a merchant regularly dealing in goods of the kind warrants that the goods shall be delivered free of the rightful claim of any third person by way of infringement or the like but a buyer who furnishes specifications to the seller must hold the seller harmless against any such claim which arises out of compliance with the specifications."

N.Y. U.C.C. § 2-312; Cal. Com. Code § 2312.[5] "To establish a breach of the warranty of non-

---

[5] "A federal court sitting in diversity [] must apply the choice of law rules of the forum state." *Fireman's Fund Ins. Co. v. Great American Ins. Co. of N.Y.*, 822 F.3d 620, 641 (2d Cir. 2016) (quotations, alterations and citation omitted). Under New York law, "[w]here a choice of law clause is not dispositive, the first step [] is to determine whether there is an actual conflict between the laws of the jurisdictions involved." *Id.* (quotations, alterations and citation omitted); *accord Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 672 F.3d 155, 157 (2d Cir. 2012). As there is no conflict between the relevant substantive law of New York and California, it is not necessary to determine which state's law applies in this case. *See, e.g. Licci*, 672 F.3d at 157 ("A choice-of-law analysis need not be performed unless there is an 'actual conflict' between the applicable rules of two relevant jurisdictions. . . . If no actual conflict exists, and if New York is among the relevant jurisdictions, the court may simply apply New York law." (quotations and citation omitted)); *Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004) ("Choice of law does not matter . . . unless the laws of the competing jurisdictions are actually in conflict. . . . In the absence of substantive difference, . . . a New York court will dispense with choice of law analysis; and if New York law is among the relevant choices, New York courts are free to apply it.")

infringement under § 2-312(3), the plaintiff buyer must show that the seller: (1) was a merchant regularly dealing in goods of the kind; (2) the goods were subject to a rightful infringement claim of any third party upon delivery; (3) the buyer did not furnish specifications to the seller; and (4) the parties did not form another agreement that relieved the seller of the warranty." *Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, No. 12-cv-5354, 2016 WL 1274011, at *4 (E.D.N.Y. Mar. 31, 2016) (quotations and citation omitted); *e.g. Abbott Labs. v. Adelphia Supply USA*, No. 15-cv-5826, 2017 WL 6014322, at * 5 (E.D.N.Y. Aug. 14, 2017). The third-party complaint plausibly alleges each of those elements, *i.e.*, that at all relevant times, PRI was a merchant that regularly dealt in Magformers Products; that Magformers LLC has raised a "rightful" claim of infringement related to the sale of the Magformers Products; that VG Rush did not furnish any specifications for the Magformers Products to PRI; and that VG Rush and PRI did not form a separate contractual agreement that modified, waived or relieved PRI of its warranties of title and non-infringement under Section 2-312 of the UCC.

"Section 2-312(3) entitles the buyer of an infringing good to indemnification from the seller for any claims by a third party for infringement." *Stampede Presentation Products, Inc. v. M & A Int'l Inc.*, No. 15-cv-557A, 2019 WL 690680, at *4 (W.D.N.Y. Jan. 4, 2019) (quotations and citation omitted), *report and recommendation adopted by* 2019 WL 688409 (W.D.N.Y. Feb. 19, 2009); *Johnson Elec. N. Am. Inc. v. Mabuchi Motor Am. Corp.*, 98 F. Supp. 2d 480, 489 (S.D.N.Y. 2000) ("Courts have interpreted section 2-312(3) to entitle the buyer of an infringing good to indemnification from the seller for any claims by a third party for infringement."); *Dolori Fabrics, Inc. v. Limited, Inc.*, 662 F. Supp. 1347, 1358 (S.D.N.Y. 1987) (holding that Section 2-312(3) of

the UCC entitles a buyer to indemnification from a merchant who regularly deals in like goods). Moreover, the seller's liability for breach of warranty under Section 2-312(3) may include consequential damages resulting from the seller's breach of warranty, *Golden Trade, S.r.L. v. Jordache*, 143 F.R.D. 504, 507 (S.D.N.Y. 1992); *see also* N.Y. U.C.C. § 2-714(3); Cal. Com. Code § 2714(3), which are defined to "include (a) [a]ny loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and (b) [i]njury to person or property proximately resulting from any breach of warranty." N.Y. U.C.C. § 2-715(2); Cal. Com. Code § 2715(2).

Both cases cited by PRI, *Marino v. Perna*, 165 Misc.2d 504, 629 N.Y.S.2d 669 (N.Y. Civ. Ct. 1995), and *Distribuidora Del Pacifico, S.A. v. Gonzalez*, 88 F. Supp. 538 (S.D. Cal. 1950), are distinguishable, *inter alia*, because they were decided after trial, not at the pleadings stage.[6] Although proof of consequential damages will ultimately rest on "what liability the [seller] fairly may be supposed to have assumed consciously, or to have warranted the [buyer] reasonably to suppose that it assumed, when the contract was made," *Janusonis v Carauskas*, 137 A.D.3d 1218, 1220, 28 N.Y.S.3d 438 (N.Y. App. Div. 2016) (quoting *Kenford Co. v. County of Erie*, 73 N.Y.2d 312, 319, 540 N.Y.S.2d 1, 537 N.E.2d 176 (N.Y. 1989)), "a determination of whether such damages were, in fact, forseeable [sic] should not be decided on a motion to dismiss and must await a fully developed record[.]" *D.K. Prop., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 168

---

[6] Moreover, *Distribuidora Del Pacifico* was decided prior to California's adoption of the UCC.

A.D.3d 505, 507, 92 N.Y.S.3d 231 (N.Y. App. Div. 2019); *see also Roman Catholic Diocese of Rockville Centre v. General Reins. Corp.*, No. 16-cv-2063, 2016 WL 5793996, at * 5 (S.D.N.Y. Sept. 23, 2016) ("Whether the injuries that gave rise to Plaintiff's claims for consequential damages were 'reasonably foreseeable and contemplated by the parties,' . . . is a factual issue and thus reserved for the merits stage of litigation."); *Esposito v. Weiner*, 160 A.D.3d 930, 72 N.Y.S.3d 475 (N.Y. App. Div. 2018) (holding that it would be premature to dismiss, *inter alia*, a demand for consequential damages at the pleadings stage). In other words, the inquiry is not whether plaintiff or defendant/third-party plaintiff will be able to establish their claims, but whether they have stated a plausible claim for relief. *See D.K. Prop.*, 168 A.D.3d at 507, 92 N.Y.S.3d 231. Since, as set forth above, the third-party complaint states plausible claims for indemnification and breach of warranties under Section 2-312(3) against, *inter alia*, PRI, in the event VG Rush is found liable to plaintiff for any of the consequential damages alleged in the original complaint, it would be entitled to seek indemnification for any such damages resulting from PRI's breach. Accordingly, the branch of PRI's motion seeking to dismiss plaintiff's claims for consequential damages pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is denied.

IV. CONCLUSION

For the reasons set forth above, PRI's motion is denied in its entirety.

**SO ORDERED**.

                                                            /s/
                                        Sandra J. Feuerstein
                                        United States District Judge

Dated: April 18, 2019
      Central Islip, New York